UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOSEPH ARRIETA (B74625), ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 15 C 2576 |
| v. ) | |
| ) | Judge Sara L. Ellis |
| MICHAEL LEMKE, TEJEDA, J. CLEMENTS, ) | |
| and McGARVY, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Plaintiff Joseph Arrieta, an inmate in the custody of the Illinois Department of Corrections now housed at Menard Correctional Center, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Defendants Michael Lemke, Joshua Clements, Jenny McGarvey,[1] and Ricardo Tejeda. Arrieta alleges that Defendants violated his due process rights by placing and keeping him in administrative detention when he was housed at Stateville Correctional Center ("Stateville") and Pontiac Correctional Center ("Pontiac"), and that Defendants retaliated against him for filing grievances. Defendants Clements, McGarvey, and Tejeda move to dismiss portions of Arrieta's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] Because construing his allegations liberally, as the Court must do for *pro se* complaints, Arrieta has sufficiently alleged the required elements of his due process and retaliation claims against these Defendants, the Court denies the motion to dismiss [23]. Given

---

[1] In his complaint, Arrieta spelled McGarvey's last name as "McGarvy," while Defendants spell it "McGarvey." The Court will use Defendants' spelling in the remainder of this Opinion.

[2] Lemke has been served but has not appeared. *See* Doc. 6. In this Opinion, the Court's reference to Defendants excludes Lemke.

the complexity of the legal issues and the facts of the case, the Court, on its own motion, recruits counsel to represent Arrieta in these proceedings.

## BACKGROUND[3]

Beginning in February 2013, Stateville's Internal Affairs division, which at the time included Stateville correctional officers Clements and Tejeda, began shaking down Arrieta's cell and interviewing him regarding his knowledge of gang activities. Arrieta disclaimed gang involvement in repeated interviews. On April 16, 2013, the prison placed Arrieta under investigation, at which point Clements and another individual questioned Arrieta regarding an assault on an inmate named Luis Martinez. Prison officials ultimately gave a different inmate a disciplinary ticket for the assault and released Arrieta from investigative status.

Nevertheless, Internal Affairs continued to investigate Arrieta. In June 2013, Clements questioned Arrieta regarding several fights at which he was not present, but Arrieta denied knowledge of these fights. Then, on July 25, 2013, after Tejeda was promoted to Assistant Warden, Tejeda ordered that Arrieta be placed in administrative detention. Arrieta inquired as to why he was placed there, but the officer Arrieta asked indicated he did not know. Arrieta then began a hunger strike to protest his placement. On July 30, Lemke, who was Stateville's warden at the time, Tejeda, and Major McGarvey visited his unit and told him that "confidential sources" had provided them Arrieta's name and that Arrieta was "the weak link into the whole matter." Doc. 5 at 8. They also indicated that they would provide him with nothing in writing regarding his placement in detention and that his grievances and continued hunger strikes would only make things "worse for [him]." *Id.*

---

[3] The facts in the background section are taken from Arrieta's complaint and the exhibits attached thereto and are presumed true for the purpose of resolving the pending motion to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007).

Arrieta's administrative detention apparently had three phases, and, during the first phase, which lasted approximately 60 days, the prison denied Arrieta phone calls, law library visits, cleaning supplies, showers, recreation commissary, visitation, barbers, chaplaincy, and most of his personal property. Arrieta saw Tejeda again in August and September, at which points Tejeda told Arrieta that Arrieta was to remain in the first phase, that Tejeda was tired of Arrieta's "'organization' assaulting" the staff and that Tejeda in his youth had been attacked by gang members. *Id.* at 9. On November 15, 2013, Arrieta filed an emergency grievance complaining about the three-phase administrative detention process. He went on more hunger strikes and filed additional grievances. Thereafter, on March 31, 2014, tactical team members shook down Arrieta's cell and transferred him to Pontiac. On July 3, he finally received learned he was being detained in connection with the incident for which he had been investigated (and apparently exonerated) in April 2013 due to information provided by confidential informants. Despite appearing before a review committee at Pontiac on several occasions since then, Arrieta remained in administrative detention through the filing of his complaint, only being released from administrative detention on December 29, 2015.[4]

**LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a

---

[4] Although the date of Arrieta's release is contained in his response to the motion to dismiss, the Court may consider it here because it is consistent with the factual content of Arrieta's complaint. *See Smith v. Dart*, 803 F.3d 304, 311 (7th Cir. 2015).

claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The Courts construes *pro se* complaints liberally. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007).

## ANALYSIS

**I.     Due Process Claim**

Defendants first argue that the Court should dismiss Arrieta's due process claim because Arrieta's allegations that he was deprived of "access to phone calls, cleaning supplies, showers, recreation, commissary, visitation, barbers, and chaplaincy for approximately sixty days" are "insufficient to implicate a liberty interest."[5] Doc. 24 at 3–4. Defendants argue that a liberty interest is not implicated for a segregation placement unless the segregation is for "an excessive amount of time coupled with unconstitutional conditions of confinement." *Id.* at 3 (citing *Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 697 (7th Cir. 2009)). Alternatively, Defendants argue that the Court should dismiss the due process claim as to Defendants Clements and McGarvey because Arrieta alleges "no facts asserting that [they] were directly involved in" his placement in administrative detention on July 25, 2013. *Id.* at 4.

The Court denies Defendants' motion to dismiss Arrieta's due process claim. First, the Court notes that, when screening the complaint, the Court used the same standard as that for a

---

[5] Defendants omit Arrieta's claim that he was also denied access to all but a few items of personal property for at least that time frame. Arrieta appears to allege that he was told that administrative detention has three phases, which seem to go from 1 (most restrictive) to 3 (least restrictive). His complaint purports to describe the restrictions for phase 1 but does not describe the conditions for the other two phases of administrative detention. In his response to Defendants' motion, however, he asserts that he is not permitted his crutches for mobility or his medical devices for showering, has restricted contact with others, and is housed behind a solid steel door. Doc. 37 at 4–5.

4

motion to dismiss, *see Maddox v. Love*, 655 F.3d 709, 718 (7th Cir. 2011) (review for failure to state a claim under § 1915A is the same as under Rule 12(b)(6)), and found that Arrieta presented a due process claim, Doc. 4 at 2 (citing *Hardaway v. Meyerhoff*, 734 F.3d 740, 743–44 (7th Cir. 2013)). Second, Defendants misconstrue the facts and applicable law. Although Arrieta suggests that prison officials subjected him to the most extreme conditions (compared to general prison life) for approximately 60 days, his complaint and response indicate that he remained in administrative detention, apart from general population, from July 25, 2013 through December 29, 2015. Doc. 5 at 8, 53; Doc. 37 at 3. Accordingly, although the conditions of his detention remain to be determined, Arrieta alleges that he spent nearly two and a half years apart from the general population.

Such a lengthy period of detention generally is sufficient to trigger a factual inquiry into the conditions of confinement in segregation or administrative detention, at least where a plaintiff alleges a flaw in the process that put him there. *See Earl v. Racine County Jail*, 718 F.3d 689, 691 (7th Cir. 2013) (an inmate's liberty interest is affected when he is placed "in conditions more restrictive than those in the general population" if those conditions "are particularly harsh" or if he is subject to such conditions "for a significantly long time."); *Marion*, 559 F.3d at 698 (7th Cir. 2009) ("[Plaintiff's] term of 240 day's segregation is significantly longer than terms of segregation imposed in cases where we have affirmed dismissal without requiring a factual inquiry into the conditions of confinement."). Consistent with the foregoing cases, the Seventh Circuit has recently cautioned against a rigid focus on the mere length of confinement at the pleadings stage. *See Kervin v. Barnes*, 787 F.3d 833, 836–37 (7th Cir. 2015) (finding that it was error "to suggest . . . that a prisoner must spend at least six months in segregation before he can complain of being deprived of liberty without due process of law"

5

because "[a] considerably shorter period of segregation may, depending on the conditions of confinement and on any additional punishments, establish a violation" (citations omitted)); *see also Gillis v. Litscher*, 468 F.3d 488, 490–91, 495 (7th Cir. 2006) (reversing grant of summary judgment for defendants on due process claim where plaintiff alleged 12-day stint in behavior modification program in which he was denied clothing, bedding, and most personal items, sensory stimulation, and human contact).

Nor has the case law required, as Defendants contend, that the conditions of detention independently be unconstitutional for this type of due process claim. The question is whether the conditions of detention impose an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484, 115 S. Ct. 2293, 132 L. Ed. 2d 418 (1995); *see also Marion*, 559 F.3d at 698 ("[I]f the conditions of segregation were significantly harsher than those in the normal prison environment, 'then a year of [segregation] might count as a deprivation of liberty where a few days or even weeks might not.'" (alteration in original) (quoting *Bryan v. Duckworth*, 88 F.3d 431, 433 (7th Cir. 1996), *abrogated on other grounds*, *Diaz v. Duckworth*, 143 F.3d 345, 346 (7th Cir. 1998))). Arrieta's allegations are sufficient, at this early stage, to trigger a factual inquiry into the actual conditions under which the prison held him during his extended administrative detention.

Finally, Arrieta's complaint sufficiently connects Clements and McGarvey to the alleged violation. The Court can reasonably infer that prison officials placed Arrieta in segregation due to Clements' reports or information regarding Clements' interviews with Arrieta. *See* Doc. 5 at 5, 10, 29. Similarly, Arrieta pleads that McGarvey was "in charge of administrative detention" and told Arrieta he had to complete a "behavior modification" program before he could be released from administrative detention. *See id.* at 8, 10, 28–29. Thus, "at this stage it does not

appear 'beyond doubt' that [Arrieta] (whose *pro se* pleadings deserve liberal construction) can prove no set of facts consistent with his complaint that would entitle him to relief" against these Defendants. *Wynn v. Southward*, 251 F.3d 588, 594 (7th Cir. 2001). Arrieta may proceed on his due process claim.

## II. Retaliation Claim

Next, Clements and McGarvey argue that the Court should dismiss Arrieta's retaliation claim against them because Arrieta "asserts that he filed a grievance on November 15, 2013" and "does not assert that he had any contact with" them after that date.[6] Doc. 24 at 5. Again, however, McGarvey and Clements' argument sidesteps factual allegations present in the complaint. Arrieta indicates that he filed not merely one, but "several grievances," and that Internal Affairs members (which included Clements) shook down his cell several times after those grievances were filed. Doc. 5 at 10. Arrieta attached grievances dated July 29, 2013 and August 30, 2013 to his complaint. In these grievances, he complained about both McGarvey and Clements. *See id.* at 28–30. Arrieta also alleges that he filed grievances in March 2013, which are not attached to the complaint. *Id*. at 10. Although Arrieta may, as Defendants suggest, have meant to refer to 2014, the Court cannot, at this stage, while drawing reasonable inferences in Plaintiff's favor, make that factual determination. The Court also understands Arrieta to allege (although this may be belied by further factual development) that Clements provided the information pursuant to which prison officials placed Arrieta in administrative detention and also bribed confidential informants to continue to provide information against Arrieta during his detention. *See id*. at 15, 45. Although Clements' continuing role in any retaliation is not entirely clear from the complaint, Arrieta may, consistent with his complaint, be able to prove a set of facts that entitles him to relief against Clements. *See Wynn*, 251 F.3d at 593–94. Arrieta also

---
[6] Tejeda does not seek dismissal of this claim.

has sufficiently alleged that McGarvey retaliated against him. As already discussed, he has alleged that McGarvey told him he would remain detained while he completed "behavior modification" and that, on July 30, 2013, just after his placement in administrative detention, Defendants Lemke, Tejeda, and McGarvey told Arrieta that writing grievances would make things worse for him. Doc. 5 at 8, 15. Arrieta then spent years in administrative detention. These allegations suffice at this stage to allow Arrieta to proceed on his retaliation claims against both Clements and McGarvey.

### III.     Recruitment of Counsel

Given the complexity of the legal issues and the particular facts of this case, the Court on its own motion requests that Michael L. Childress, Childress Duffy, Ltd., 500 N. Dearborn, Suite 1200, Chicago, IL 60654, represent Arrieta in accordance with counsel's trial bar obligations under the District Court's Local Rule 83.37 (N.D. Ill.). Arrieta's counsel shall, if desired, submit an amended complaint prior to the date of the next status hearing.

**CONCLUSION**

For the foregoing reasons, the Court denies Defendants Clements, McGarvey, and Tejeda's motion to dismiss [23]. The Court, on its own motion, recruits counsel for Arrieta. The Court requests that Michael L. Childress, Childress Duffy, Ltd., 500 N. Dearborn, Suite 1200, Chicago, IL 60654, represent Arrieta, as to this case only, in accordance with counsel's trial bar obligations under the District Court's Local Rule 83.37 (N.D. Ill.). The case is set for a status hearing on July 19, 2016. Arrieta's counsel shall, if desired, submit an amended complaint prior to that date. Defendant Lemke, whose responsive pleading is overdue, *see* Doc. 6, is ordered to file an appearance and responsive pleading by June 28, 2016.

Dated: June 13, 2016

SARA L. ELLIS
United States District Judge